## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SONICWALL, INC., | |
| Plaintiff, | |
| v. | Civil Action No. 11-920 LPS |
| INNOVATIO IP VENTURES, LLC, | |
| Defendant. | |

### DEFENDANT'S OPENING MEMORANDUM IN SUPPORT OF ITS
### MOTION TO DISMISS OR, IN THE ALTERNATIVE,
### <u>TO TRANSFER TO THE NORTHERN DISTRICT OF ILLINOIS</u>

<u>OF COUNSEL:</u>
Matthew G. McAndrews
Raymond P. Niro, Jr.
Brian E. Haan
Gabriel I. Opatken
NIRO, HALLER & NIRO
181 West Madison St., Suite 4600
Chicago, Illinois 60602
Telephone: (312) 236-0733

Kenneth L. Dorsney (I.D. #3726)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Telephone: (302) 888-6800
kdorsney@morrisjames.com

*Attorneys for Plaintiff,*
**INNOVATIO IP VENTURES, LLC**

Dated: December 5, 2011

# TABLE OF CONTENTS

I.  INTRODUCTION .................................................................................................................1

II. FACTUAL BACKGROUND ................................................................................................3

    A.  Innovatio's Asserted Patents ...................................................................................3

    B.  In March 2011, Innovatio Filed the Illinois Action, the First Case Regarding
Infringement of the Asserted Patents .......................................................................4

    C.  Attempts by Access Point Manufacturers to Stall Innovatio's First-Filed Suit ..................4

III. THIS COURT SHOULD DISMISS THIS DECLARATORY JUDGMENT ACTION
UNDER THE "FIRST-TO-FILE" RULE.................................................................................6

    A.  Innovatio Enjoys a Presumptive Right to Choose Its Forum ..............................................6

    B.  Proceeding in Illinois Would Not Result in a "Wrong" or "Injustice" ..............................8

        1.  Principles of Judicial Economy Strongly Support
Having This Matter Adjudicated in Illinois ...................................................8

            a.  As to the Current Defendants, Illinois is the Most Logical and
Convenient Forum for Resolving This Dispute .....................................8

            b.  The Illinois Action Is Substantially Ahead of This Action....................9

            c.  This Action Will Not Resolve Numerous Infringement Issues
Currently Before the Illinois Court ........................................................9

            d.  This Action, in Its Current Form, Will Likely Not Resolve the
Issue of Damages ..................................................................................12

            e.  It Is Unlikely That This Action Will Resolve Issues of
Invalidity ...............................................................................................13

        2.  Some of the Illinois Defendants Are Not Subject to
Jurisdiction in Delaware .............................................................................14

    C.  The Customer Suit Exception Does Not Apply to the Current Proceeding......................15

        1.  Innovatio has a substantial interest in proceeding
against the Illinois defendants.......................................................................15

        2.  This case will not resolve all of the issues in the Illinois
action............................................................................................................17

IV. THIS COURT SHOULD ALSO EXERCISE ITS DISCRETION TO DISMISS
SONICWALL'S COMPLAINT ............................................................................................19

V.  CONCLUSION....................................................................................................................20

# TABLE OF AUTHORITIES

## CASES

*A.P.T., Inc. v. Quad Environmental Techs.*,
    698 F. Supp. 718 (N.D. Ill. 1988) .......................................................................... 16

*Air Prods. and Chems., Inc. v. MG Nitrogen Services., Inc.*,
    133 F. Supp.2d 354 (D. Del. 2001) ....................................................................... 16

*American Ntl. Can Corp. v. Ball Corp.*,
    21 U.S.P.Q.2d 1719 (N.D. Ill. 1991) ...................................................................... 20

*Broadcom Corp. v. International Trade Comm'n*,
    542 F.3d 894 (Fed. Cir. 2008) ................................................................................ 11

*Card Activation Tech. v. Pier 1 Imports, Inc.*,
    2009 WL 2956926 (N.D. Ill. Sept. 14, 2009) ........................................................ 16

*Cashedge, Inc. v. Yodlee, Inc.*,
    2006 WL 2038504 (D. Del. July 19, 2006) .............................................................. 6

*Chase Manhattan Bank, USA v. Freedom Card, Inc.*,
    265 F. Supp.2d 445 (D. Del. 2003) ...................................................................... 6, 7

*Cherdak v. The Stride Rite Corp.*,
    396 F. Supp.2d 602 (D. Md. 2005) ....................................................................... 17

*Codex Corp. v. Milgo Elect. Corp.*,
    553 F.2d 735 (1st Cir. 1977) ................................................................................. 16

*Comcast Cable Communicationn Co. v. USA Video Tech. Corp.*,
    Case No. 06-407, 2008 WL 1908612 (D. Del. Apr. 29, 2008) ................................. 1

*C-O-Two Fire Equipment Co. v. Kerotest Mfg. Co.*,
    189 F.2d 31 (3d Cir. 1951) ........................................................................... 1, 2, 14

*Crestron Elects., Inc. v. Lutron Elects. Co.*,
    2010 WL 3035223 (D.N.J. Aug. 3, 2010) ............................................................. 7, 8

*Crosley Corp. v. Hazeltine Corp.*,
    122 F.2d 925 (3d Cir. 1941) ................................................................................... 6

*E.E.O.C. v. Univ. of Pa.*,
    850 F.2d 969 (3d Cir. 1988) ................................................................................... 1

*Emerson Elect. Co. v. Black & Decker Mfg.*,
    606 F.2d 234 (8th Cir. 1979) ........................................................................... 15, 16

*Genentech, Inc. v. Eli Lilly and Co.*,
    998 F.2d 931 (Fed. Cir. 1993) ............................................................................. 6, 8

*Human Genome Sciences, Inc. v. Genentech, Inc.*,
    C.A. No. 11-082-LPS (D. Del. July 18, 2011) ........................................................ 7

*International Harvester Co. v. Deere & Co.*,
    623 F.2d 1207 (7th Cir. 1980) ............................................................................ 20

*Intervet, Inc. v. Merial Ltd.*,
    655 F. Supp.2d 131 (D.D.C. 2009) ....................................................................... 6

*IP Innovation L.L.C. v. Dell Computer Corp.*,
    2004 U.S. Dist. LEXIS 6129 (N.D. Ill. Apr. 8, 2004)......................................... 18

*Kahn v. General Motors Corp.*,
    889 F.2d 1078 (Fed. Cir. 1989) .............................................................. 7, 15, 17

*Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*,
    342 U.S. 180 (1952) ............................................................................................. 1

*Medimmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136 (2007) .................................. 19

*Microsoft Corp. v. Commonwealth Scientific and Indus. Research Org.*,
    2007 WL 4376104 (E.D. Tex. 2007)..................................................................... 16

*People with AIDS Health Group v. Burroughs Wellcome Co.*,
    1992 U.S. Dist. LEXIS 578 (D.D.C. Jan. 17, 1992) ............................................ 20

*Shire U.S., Inc. v. Johnson Matthey, Inc.*,
    543 F. Supp.2d 404 (E.D. Pa. 2008)....................................................................... 7

*Teleconference Sys. v. Proctor & Gamble Pharm.*,
    676 F. Supp.2d 321 (D. Del. 2009) ................................................................. 17, 18

*Terra Nova Ins. Co. v. 900 Bar, Inc.*,
    887 F.2d 1213 (3d Cir. 1989) .............................................................................. 19

*Time Warner Cable, Inc. v. GPNE Corp.*,
    497 F. Supp.2d 584 (D. Del. 2007) ..................................................................... 6, 7

*Time Warner Cable, Inc. v. USA Video Tech. Corp.*,
    520 F. Supp.2d 579 (D. Del. 2007) ..................................................................... 7, 9

*Wilton v. Seven Falls Co.*,
    515 U.S. 277 (1995) ............................................................................................. 19

## STATUTES

35 U.S.C. § 282 (2010) .............................................................................................. 13

## I.    INTRODUCTION

It is well-established that where two lawsuits involving the same subject matter are filed in two different jurisdictions, the first-filed action should be given preference absent special circumstances.  *See, e.g., E.E.O.C. v. Univ. of Pa.*, 850 F.2d 969, 971 (3d Cir. 1988); *see also Comcast Cable Communication Co. v. USA Video Tech. Corp.*, Case No. 06-407, 2008 WL 1908612 (D. Del. Apr. 29, 2008) (noting that, in the Third Circuit, the first-filed rule is the "norm, not the exception.").  The circumstances presented here are tailor made for the "first-to-file" rule.

One of the seminal cases on the first-to-file rule is the Third Circuit's holding in *C-O-Two Fire Equipment Co. v. Kerotest Mfg. Co.*, 189 F.2d 31 (3d Cir. 1951).  In *Kerotest*, the C-O-Two Fire Equipment Company ("CO2") filed a patent infringement suit in the Northern District of Illinois, alleging that Acme Equipment Company ("Acme") infringed two CO2 patents related to portable fire extinguishers. Two months later, Kerotest Manufacturing ("Kerotest"), the manufacturer that supplied the fire extinguishers to Acme, filed a declaratory judgment suit in Delaware, seeking a declaration of non-infringement and/or invalidity.  In reversing the lower court's decision to enjoin the Illinois action, the Third Circuit noted:

> ". . . the whole of the war and all the parties to it are in the Chicago theater and there only can it be fought to a finish as the litigations are now cast.  On the other hand if the battle is waged in the Delaware arena there is a strong possibility that the Chicago suit nonetheless would have to be proceeded with for Acme is not and cannot be made a party to the Delaware litigation.  <u>The Chicago suit when adjudicated will bind all the parties in both cases.  Why, under the circumstances, should there be two litigations where one will suffice?  We can find no adequate reason.</u>"

*Id.* at 34 (emphasis added).  The Supreme Court affirmed the Third Circuit's ruling.  *See Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180 (1952).

The Third Circuit's ruling in *Kerotest*, which still provides the controlling rule of decision, is equally applicable to the present case.  Defendant Innovatio IP Ventures, LLC ("Innovatio") is the owner of a significant number of patents related to wireless networks.  In March 2011, Innovatio filed suit in the Northern District of Illinois (hereinafter the "ABP Action"), alleging that several defendants were liable for patent infringement based on their use of Innovatio's patented technology.  The accused products in the Illinois case include access points (i.e. routers) and terminals (i.e. laptops) manufactured by a wide array of companies, including the current Plaintiff, SonicWALL.

Nearly seven months later, SonicWALL filed this declaratory judgment action in Delaware, seeking a judgment as to infringement and validity of the very same Innovatio patents asserted in the Illinois action.  In fact, the only detailed basis that SonicWALL provided for its belief that it has standing to bring this case is that "Innovatio served initial infringement contentions [in the ABP Action] which identified 'SonicWALL wireless access points' as Accused Instrumentalities of at least one ABP Defendant," and that in those contentions "Innovatio alleges that certain 'SonicWALL wireless access points' and/or wireless local area networks ('WLANs') comprising 'SonicWALL wireless access points' infringe the Patents-in-Suit."  [Dkt. No. 1; SonicWALL's Compl. at 26-27.]  Thus, by SonicWALL's own admissions, **the issues raised in SonicWALL's complaint are already being decided in Innovatio's first-filed case in Illinois.**  Accordingly, the first-to-file rule mandates that the Illinois action should be given preference.

Moreover, proceeding in Illinois will not result in an injustice.  Illinois is the epicenter of the dispute, as many of the parties, infringing networks and relevant documents and witnesses are located in, or near, Illinois.  To the contrary, the only (albeit tenuous) tie to Delaware is that

Innovatio and SonicWALL are incorporated here.  Innovatio is unaware of (and to date, no infringer has identified) any relevant document located, or witness that resides, in Delaware.

In addition, five of the six ABP defendants have confirmed that they do not use **any** SonicWALL access points, and even the one ABP defendant that does use SonicWALL access points (Caribou Coffee), also uses a significant number of access points from other manufacturers including Colubris Networks, Hewlett-Packard and Meraki, Inc.  Thus, the current suit (even if combined with the other manufacturer suits currently pending) will only resolve a fraction of the issues, if any, currently before the Illinois court.  Innovatio and the Illinois defendants will still have to proceed with the Illinois action regardless of the outcome in this Delaware action – the precise outcome that the Third Circuit warned against in *Kerotest*.

In light of Innovatio's presumptive right to proceed in its forum of choice against the parties of its choice, the judicial efficiency achieved by proceeding in a single lawsuit to resolve all matters relating to the Illinois defendants, and the fact that the Illinois action was filed first, Innovatio's motion should be granted and this case should be dismissed or transferred to Illinois.

## II.    FACTUAL BACKGROUND

### A.    Innovatio's Asserted Patents

Innovatio owns numerous patents having broad applications in the field of wireless local area networks ("WLANs"), commonly referred to as "Wi-Fi."  One common purpose of a WLAN is to provide a user with access to the Internet through the use of wireless access points, which communicate wirelessly with a terminal.  Innovatio's patents include an array of system, apparatus and method claims directed to an access point, a terminal or combinations thereof.

**B.    In March 2011, Innovatio Filed the Illinois Action, the First Case Regarding Infringement of the Asserted Patents**

In March 2011, Innovatio filed a patent infringement suit in the Northern District of Illinois. In this suit, Innovatio originally named ten defendants. Innovatio has since settled with four of the defendants, leaving six defendants in the case. Generally speaking, the defendants are entities such as hotels, restaurants and retail stores that derive substantial financial benefit from offering WLAN services to their customers and/or using WLAN for their business purposes. For example, many hotels and restaurants make substantial money by either charging customers to use their wireless networks, by luring customers into their premises by offering free wireless network access, or by advertising on their networks. Likewise, these businesses realize significant efficiency gains in their business by using, for example, wireless handheld devices for taking customer's orders or wireless networks for inventory purposes.

The parties in the Illinois case have served their initial infringement, non-infringement and invalidity contentions, as well as multiple sets of discovery requests and responses. Final infringement contentions are due in just over two months, with defendants' final non-infringement and invalidity contentions due one month later. In addition, the claim construction process is set to start on March 16, 2012, and the initial close of fact discovery is April 13, 2012.

**C.    Attempts by Access Point Manufacturers to Stall Innovatio's First-Filed Suit**

As previously noted, Innovatio's patents include claims that cover wireless access points, terminals and a combination of both. There are dozens, if not hundreds, of entities that manufacture these devices. To date, four manufacturers – Cisco Systems, Inc. ("Cisco"), Motorola Solutions ("Motorola"), NETGEAR, Inc. ("NETGEAR") and, in this case, SonicWALL – have filed declaratory judgment suits in Delaware. All of these cases were filed months after Innovatio filed the Illinois action. The complaints filed by these parties are nearly

identical and all seek a declaration that: 1) the manufacturers' WLAN products do not infringe the patents that Innovatio asserted in the Illinois case; and 2) the asserted Innovatio patents are invalid. None of the manufacturers allege (nor could they allege) that Innovatio has directly accused them of infringement. Rather, the only basis alleged for bringing this suit is the manufacturers' potential obligations to indemnify their customers, including some of the ABP defendants. Notably, none of the manufacturers has ever admitted or provided any evidence that they are actually obligated to indemnify their customers for any of the customer's liability to Innovatio.

The first of these manufacturer suits was filed by Cisco and Motorola in May 2011. Shortly after Cisco and Motorola filed their suit in Delaware, counsel for Cisco and Motorola (Kirkland & Ellis) filed appearances on behalf of most of the remaining ABP defendants.[1] The ABP defendants proceeded to file a motion to stay the Illinois action under the customer suit exception.[2] Judge Chang was originally assigned to the ABP action. However, given Cisco and Motorola's significant involvement in the ABP action, and, moreover, given a conflict of interest that Judge Chang has with Motorola, Judge Chang recused himself (despite the fact that Motorola is not a named party in the action). Judge Guzman has recently been assigned to the case and will likely rule on the defendants' motion to stay in due course. In the meantime, the Illinois case is proceeding, and Magistrate Judge Schenkier, who is presiding over discovery in the ABP case, refused to stay discovery despite the pending motion to stay.

---

[1] Kirkland & Ellis also represents NETGEAR.

[2] As will be explained below, the customer suit exception is not applicable to the Illinois action for multiple reasons.

Innovatio has filed a motion to dismiss the Cisco/Motorola declaratory judgment suit, or in the alternative to transfer the suit to Illinois, under the first-to-file rule.  This Court heard oral argument on this motion on October 7, 2011.  This motion remains pending.

## III.   THIS COURT SHOULD DISMISS THIS DECLARATORY JUDGMENT ACTION UNDER THE "FIRST-TO-FILE" RULE

### A.   Innovatio Enjoys a Presumptive Right to Choose Its Forum

"Where related lawsuits exist, 'it is in the interests of justice to permit suits involving the same parties and issues to proceed before one court.'"  *See Cashedge, Inc. v. Yodlee, Inc.*, 2006 WL 2038504, at *2 (D. Del. July 19, 2006) (citations omitted).  In determining which of the two courts should resolve the issue, the Federal Circuit has a well-established "general rule" that the forum of the first-filed action is favored unless there is "sound reason that would make it unjust or inefficient to continue the first-filed action."  *Genentech, Inc. v. Eli Lilly and Co.*, 998 F.2d 931, 937-38 (Fed. Cir. 1993). This Court has explained the sound principles that underlie the first-to-file rule:

> The policy underlying that rule is at least two fold and eminently practical.  For the benefit of litigants, 'the party who first brings a controversy into a court . . . [should] be free from the vexation of subsequent litigation over the same subject matter.'  For the benefit of courts and the public they serve, 'courts already heavily burdened with litigation with which they must of necessity deal should . . . not be called upon to duplicate each other's work involving the same issues and the same parties.

*Chase Manhattan Bank, USA v. Freedom Card, Inc.*, 265 F. Supp.2d 445, 448 (D. Del. 2003) *quoting Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 930 (3d Cir. 1941); *see also Time Warner Cable, Inc. v. GPNE Corp.*, 497 F. Supp.2d 584, 588 (D. Del. 2007).  If a court determines that the first-to-file rule applies, the "presumptive course of action is dismissal of" the second filed suit.  *Intervet, Inc. v. Merial Ltd.*, 655 F. Supp.2d 131, 135 (D.D.C. 2009).

"While the first-filed rule is not a rigid or inflexible rule to be mechanically applied, only in rare or extraordinary circumstances should the first-filed action give way to one filed later."

*Chase*, 265 F. Supp.2d at 448 (internal quotations and citations omitted).   Simply put, the "presumptive right of the first litigant to choose the forum weigh[s] heavily in [that litigant's] favor" and that right should be disturbed "only to prevent wrong or injustice."  *Kahn v. General Motors Corp.*, 889 F.2d 1078, 1081-82 (Fed. Cir. 1989).

The first-to-file rule applies where the subject matter of two cases substantially overlap. In the patent context, this first-to-file rule applies where "the actions in question involve the same patent and the same allegedly infringing product, though not necessarily the same parties." *See Shire U.S., Inc. v. Johnson Matthey, Inc.*, 543 F. Supp.2d 404, 409 (E.D. Pa. 2008) *citing Time Warner Cable, Inc. v. USA Video Tech. Corp.*, 520 F. Supp.2d 579, 586 (D. Del. 2007) (hereinafter "USA Video"); *accord Time Warner Cable, Inc. v. GPNE Corp.*, 497 F. Supp.2d 584, 588-89 (D. Del. 2007).[3]

The exact issues to be resolved by this action – namely the validity of the Innovatio patents and whether SonicWALL's products infringe[4] – are currently before another court.

_____

[3]  This issue was also addressed in the unpublished opinion in *Human Genome Sciences, Inc. v. Genentech, Inc.*, C.A. No. 11-082-LPS (D. Del. July 18, 2011) (granting motion to transfer second filed patent case despite the fact that the second case did not include a perfect overlap of parties and products).

[4]  SonicWALL may argue that there is not substantial overlap of the two cases because some specific models of its WLAN product line are not used by any of the Illinois defendants, and thus, the issue of whether such additional products infringe will not be resolved by the Illinois court.  Courts have not so strictly interpreted the "substantial overlap" requirement to include an exact overlap of products.  *See, e.g., Crestron Elects., Inc. v. Lutron Elects. Co.*, 2010 WL 3035223 at *4 (D.N.J. Aug. 3, 2010)  (transferring second-filed case despite the fact that it sought a declaration of non-infringement for a product line not at issue in the first-filed case).

Moreover, if SonicWALL argues that there is not a substantial overlap of products, SonicWALL must also identify: (1) the products that are being used by other infringers; (2) the identity of those infringers; and (3) the differences, if any, between the "additional" products and those before the ABP court, or any other court in which a Innovatio case was pending prior to the filing of SonicWALL's suit, such that the other court's decision will not impact the determination of whether such "additional" products infringe.

Innovatio first raised these issues in Illinois.  Accordingly, under the first-to-file rule, Innovatio has a presumptive right to proceed in Illinois, the forum of its choice.

### B.      Proceeding in Illinois Would Not Result in a "Wrong" or "Injustice"

Because the Illinois case was filed first, and moreover because all of the issues raised in the current case are before the Illinois court (but not *vice versa*), this case should be dismissed unless proceeding in Illinois would result in an injustice or wrong.  Such "special circumstances" for not adhering to the first-to-file rule may stem from several factors, including but not limited to, judicial inefficiency, inequitable conduct, forum shopping, whether the later-filed case has developed further than the first-filed action, the absence of jurisdiction over necessary parties and the convenience and availability of witnesses.  *See, e.g. Genentech*, 998 F.2d at 938; *Crestron*, 2010 WL 3035223 at *2.  Any such exception must be justified by sound reasoning that would make it unjust or inefficient to continue the first-filed action.  *See Genentech*, 998 F.2d at 938.  SonicWALL bears the burden of showing that special circumstances exist that should bar the first-to-file rule.  *See Crestron*, 2010 WL 3035223 at *2 (citations omitted).  None of these factors weigh in favor of proceeding in Delaware.

### 1.      Principles of Judicial Economy Strongly Support Having This Matter Adjudicated in Illinois

#### a.      As to the Current Defendants, Illinois is the Most Logical and Convenient Forum for Resolving This Dispute

Innovatio has a substantial basis for proceeding against the current defendants in Illinois. These defendants have hundreds of locations (including for some, its corporate headquarters) in Illinois.  The issue of infringement will hinge on information regarding the WLAN equipment that the defendants use and how such equipment is used and configured in the infringing networks.  Such information will likely be in Illinois, and will be exclusively under the control of the Illinois defendants.  According to the patents, many of the inventors reside in Iowa, just a few

hours from Chicago.   Moreover, the defendants have identified the prosecuting attorneys as being persons of interest to their case.  These attorneys reside in the Northern District of Illinois.  Given the ties to Illinois, this factor weighs heavily in favor of dismissing the Delaware action.

### b. The Illinois Action Is Substantially Ahead of This Action

As noted, the parties in Illinois have already exchanged their initial infringement and invalidity contentions, and the parties have exchanged several sets of discovery requests.  The parties are scheduled to serve their final infringement and invalidity contentions, and commence the claim construction process, in early 2012.   Accordingly, the parties have made, and are continuing to make, significant progress in the Illinois action.  In contrast, the Delaware case is still in its infancy. This factor also weighs heavily in favor of dismissing the Delaware action in favor of the Illinois action.  *See USA Video*, 520 F. Supp.2d at 587-88 (dismissing the second-filed Delaware action which had not advanced as far as the first action).

### c. This Action Will Not Resolve Numerous Infringement Issues Currently Before the Illinois Court

The Illinois defendants do not contest that they operate and use wireless networks in connection with their businesses.  One typical network configuration includes a wireless router that is connected to the Internet.   The wireless router acts as an access point, which communicates with a terminal (*e.g.*, a laptop), allowing the user to wirelessly access the Internet.  Innovatio's Complaint identified more than 340 asserted claims, including apparatus, system and method claims related to access points, terminals and combinations including the two.  Based on Innovatio's initial infringement contentions, these asserted claims can be categorized as shown on the next page.  From this chart it is clear that this action, which involves only one of many manufacturers, will resolve infringement as to only a small fraction of these claims, and only for a small percentage of accused products.

9

| Claim Type | No. of Claims/Patents | Direct Infringer |
|---|---|---|
| System Method | 31 claims from 4 patents | Customer |
| System Apparatus | 82 claims from 7 patents | Customer |
| Access Point Method | 37 claims from 1 patent | Customer |
| Access Point Apparatus | 49 claims from 4 patents | Customer **and** Manufacturer[A] |
| Terminal Method | 109 claims from 4 patents | Customer |
| Terminal Apparatus | 26 claims from 2 patents | Customer **and** Manufacturer[B] |
| Access Point or Terminal Method[C] | 14 claims from 3 patents | Customer |

A: Includes WLAN equipment manufacturers such as Cisco, Motorola, HP, Aruba, SonicWALL, NETGEAR, Colubris, Meraki, etc.

B: Includes manufacturers of laptops, tablet computers, cell phones, inventory management devices, etc.

C: Claims include, for example, "sending devices" and "destination devices" that may cover either use of an access point or use of a terminal

First, based on discovery from the ABP action, only one of the remaining defendants, Caribou Coffee, uses any SonicWALL equipment. Thus, this action will have **no** impact on **any** issues regarding whether the remaining five ABP defendants infringe the Innovatio patents.

Second, Caribou concedes that it also uses equipment from other manufacturers, such as Colubris Networks, Hewlett Packard and Meraki. A finding of infringement as to Caribou's SonicWALL access points will not resolve whether the significant number of Caribou's non-SonicWALL access points infringe. As such, this action will not resolve infringement even as to Caribou, the only ABP defendant that uses SonicWALL equipment. [5]

---

[5] Innovatio expects SonicWALL to argue that this Court should consider the cumulative number of access points from the four manufacturers that have filed declaratory judgment suits in Delaware. Based on the information produced by the ABP defendants, a large majority of access points used by the ABP defendants are manufactured by parties other than Cisco, Motorola, SonicWALL or NETGEAR.

Third, nearly 150 of the 340 asserted Innovatio claims cover a terminal device that communicates with the access point.  SonicWALL does not manufacture any terminal devices.  Accordingly, the present action will have **no** impact on **any** issues regarding whether any of the ABP defendants – including Caribou Coffee – infringe these terminal claims.

Fourth, the ABP defendants do not dispute that they – rather than the manufacturer of a hardware component – put the infringing networks as a whole into service, including having configured and operated those networks and obtained the benefit of operating such networks.  Likewise, these defendants are the ones employing the infringing methods of use.  Based on Innovatio's initial analysis, **nearly 80% of the asserted claims (273 of the 348 asserted claims) are system or method claims, for which ABP defendants, not SonicWALL, are the direct infringers**.  The Delaware action will not resolve the issue of infringement for **any** of these system or method claims.[6]

Fifth, contrary to positions previously taken by other manufacturers, Innovatio's patents are not limited to claims that are mandatory to the 802.11 standard.  Based on Innovatio's initial contentions, only 36 of the 348 asserted claims (in seven of the 17 asserted patents) cover features that are mandatory to support the 802.11 standard.  In addition, 333 of the 348 asserted claims (in 14 of the 17 asserted patents) cover: (1) portions of the standard that are "optional" for a device to support; (2) portions of the standard that, even if supported by the device, are "optional" for the user to utilize; or (3) device or system implementations that are not defined by

---

[6] SonicWALL may argue that this Court can resolve the issue of whether SonicWALL can be liable for indirect infringement by inducing the end users to infringe.  Even this decision, however, will not be dispositive of whether the Illinois defendants directly infringe.  *See, e.g., Broadcom Corp. v. International Trade Comm'n*, 542 F.3d 894, 898 (Fed. Cir. 2008) (affirming holding that manufacturer did not induce infringement of the '311 patent (currently asserted by Innovatio) despite prior finding that the network operator may have directly infringed).

the standard and that may be different for different manufacturers or users.[7]  Put another way, **more than 95% of the asserted claims, in 14 of the 17 asserted patents, cover "optional" or implementation features that are not defined by the standard**.  Because each manufacturer must decide which optional or implementation features to include in its product, and because each network operator must choose which of these features to activate in its network, a decision as to SonicWALL's products will have little, if any, impact on similar determinations for other manufacturers or network operators.

If this action proceeds, it is almost certain that Innovatio and the ABP defendants would still have to proceed in a second suit to address these remaining infringement issues.  Such duplicative litigation can be avoided by dismissing this suit and allowing Innovatio to continue to proceed in Illinois.  This factor also weighs in favor of dismissing this action.

### d. This Action, in Its Current Form, Will Likely Not Resolve the Issue of Damages

Finally, even for the relative few infringement issues that may be addressed by this suit (i.e. only the apparatus claims and only as to the SonicWALL access points used by Caribou Coffee), this court may not be able to award damages sufficient to fully compensate Innovatio for defendants' infringement.  As previously noted, it is the Illinois defendants that benefit from operating and using the infringing networks, not the equipment manufacturers such as SonicWALL.  Thus, Innovatio can only be fully compensated if any damages award includes compensation for the benefits of the inventions obtained by the Illinois defendants.  This dilemma may only be resolved by: 1) SonicWALL admitting that it is responsible for damages

---

[7] The total number of patents referenced (7+14) exceeds the number of asserted patents (17) because certain patents contain both "mandatory" and "optional"/implementation claims.  Likewise, the number of asserted claims referenced (36+333) exceeds the number of asserted claims (348) because certain claims may be mandatory for one variation of the 802.11 standard (i.e., 802.11 (a), (b), (g) or (n)) but may not be "mandatory" for other variation(s).

awarded as a result of their customer's use of the infringing products; or 2) possibly joining customers that use the infringing SonicWALL products to the present suit. Until SonicWALL agrees to such a resolution, Innovatio should be allowed to proceed in Illinois so that it may obtain full compensation for defendants' infringing use of Innovatio's patented technology.

### e. It Is Unlikely That This Action Will Resolve Issues of Invalidity

All issued patents enjoy a presumption of validity and can only be invalidated by a showing of clear and convincing evidence. *See* 35 U.S.C. § 282 (2010). Thus, invalidating any issued patent is an uphill battle. More troubling for the current infringers, however, is that they are faced with the nearly impossible task of invalidating seventeen asserted patents. While these patents generally relate to wireless technology, they cover different aspects of wireless networks. The patents stem from several different families having different inventors and priority dates. Thus, even in the unlikely event that the defendants uncover an invalidating prior art reference, it is unlikely that the reference will invalidate a significant number of Innovatio's asserted patents.

In addition, four of the patents currently asserted have been previously asserted against other major players in the wireless space, including Agere Systems, Qualcomm and ST Microelectronics. These defendants vigorously searched for prior art to invalidate the asserted patents, but their searches were futile. Nevertheless, the art identified by the defendants during these litigations was submitted to the PTO and was considered during the prosecution of the numerous children cases off these four patents. Several of these children cases have since issued as patents, all having literally pages and pages of cited references identified therein. Many of these children patents are among the patents currently asserted by Innovatio.

Moreover, one patent has survived an appeal and PTO reexamination, with both the Federal Circuit and PTO confirming the validity of this patent. The arguments raised during

these proceedings were considered during the prosecution of children cases claiming priority to this patent, strengthening the validity of those cases as well.  Thus, many of the asserted patents have survived (directly or indirectly) the scrutiny of the Federal Circuit and PTO (twice).

The likelihood that SonicWALL, or any other manufacturer, will be able to invalidate the hundreds of "battle-tested" claims in the seventeen asserted patents is slim to none.  Accordingly, it is unlikely that this action will completely resolve the issue of validity either.

### 2. Some of the Illinois Defendants Are Not Subject to Jurisdiction in Delaware

Another factor to consider in determining whether to proceed with the second-filed suit is whether the parties named in the original suit are subject to jurisdiction in the second venue.  If all of the parties are not subject to jurisdiction, it is almost a certainty that proceeding in the second forum will result in duplicative litigation.  *See  C-O-Two Fire Equipment Co. v. Kerotest Mfg. Co.*, 189 F.2d 31, 34 (3d Cir. 1951) (noting the likelihood of multiple litigations because the defendant in the original suit was not subject to jurisdiction where the second suit was filed).  Here, Caribou Coffee – the only ABP defendant that uses SonicWALL equipment – is a Minnesota corporation with a principal place of business in Minnesota.  Caribou has **no** locations in Delaware.  Accordingly, it is unlikely to be subject to the jurisdiction of this Court.[8]  Again, because Caribou uses wireless equipment from manufacturers other than SonicWALL (and, for that matter, Cisco, Motorola and NETGEAR), it is almost a certainty that allowing the Delaware action to proceed will result in duplicative litigation.  This factor also weighs in favor of dismissal of SonicWALL's complaint.

---

[8]  Likewise, Meijer, Inc. is a Michigan corporation with a principal place of business in Michigan and with no locations in Delaware.

Proceeding in Illinois will not result in an injustice or wrong. To the contrary, it is the most efficient and convenient forum for resolving the issues raised against the current defendants. SonicWALL's complaint should be dismissed under the first-to-file rule.

### C.    The Customer Suit Exception Does Not Apply to the Current Proceeding

SonicWALL may argue that this suit will not result in duplicative litigation because the ABP defendants have attempted to stay the Illinois litigation under the customer suit exception. The customer suit exception does not apply to the current situation for multiple reasons.

As noted above, absent exceptional circumstances, where proceedings involving similar parties and issues are pending in two courts, the first-filed case should have priority. *See Kahn*, 889 F.2d at 1081. Courts have tailored a narrow exception to this rule where a patentee files a first suit against a customer that is simply a reseller of the accused goods, while the manufacturer of the accused goods later files a second suit, seeking a declaration that its products do not infringe.[9] In this scenario, courts may invoke the "customer suit exception" to stay or enjoin the customer suit. This exception, however, does not apply to the present scenario for many reasons.

### 1.    Innovatio has a substantial interest in proceeding against the Illinois defendants

The rationale behind the customer suit exception is that it allows the manufacturer to defend against the infringement allegations made against its products. This does not mean, however, that a patentee can never proceed against a customer that uses an infringing product.

Rather, courts have consistently held that the customer suit exception does not provide a basis for staying a customer suit if the patentee has a legitimate purpose for proceeding against the customer instead of the manufacturer. *See Emerson Elect. Co. v. Black & Decker Mfg.*, 606

---

[9] Courts have also given priority to the second suit if there is evidence that forum shopping motivated the choice of venue for the first suit. The ABP defendants have not alleged (and cannot allege) that Innovatio engaged in forum shopping in filing its suit in Illinois.

F.2d 234 (8th Cir. 1979) (denying to apply customer suit exception where patentee had a reasonable basis for maintaining its first action against the customer); *Codex Corp. v. Milgo Elect. Corp.*, 553 F.2d 735, 738 n.6 (1st Cir. 1977) ; *A.P.T., Inc. v. Quad Environmental Techs.*, 698 F. Supp. 718, 721 (N.D. Ill. 1988) ("[W]here the patentee has a separate interest in litigating against the customer, the "real party in interest" rationale for giving priority to the manufacturer's lawsuit is inapplicable.  **In those situations courts do not apply the customer suit exception**.") (emphasis added).

One legitimate purpose for proceeding against the customer is where the manufacturer makes only a component of the infringing good or network, making the end customer the direct infringer.  *See, e.g., Microsoft Corp. v. Commonwealth Scientific and Indus. Research Org.*, 2007 WL 4376104 at **2-3 (E.D. Tex. 2007) (holding that the customer suit exception did not apply where the manufacturer supplied only a part of the infringing device); *Air Prods. and Chems., Inc. v. MG Nitrogen Services., Inc.*, 133 F. Supp.2d 354, 357 (D. Del. 2001) (same).  If the manufacturer can only be liable for indirect infringement, the customer will still have to be involved in the manufacturer suit, at least for purposes of discovery, because the patentee must prove direct infringement as part of its indirect infringement claim.  The customer suit exception does not apply in such situations because there is no efficiency in staying the customer suit:

> [Such] cases held that method patents do not support the customer suit exception because in those cases, the customers were the only direct infringers of the patented process, and the manufacturers could only be liable for indirect infringement. This distinction is relevant because indirect infringement requires a showing of direct infringement. These cases found that because the customers-- the alleged direct infringers--would be necessary parties to the manufacturer action, no efficiency would be gained through a stay.

*Card Activation Tech. v. Pier 1 Imports, Inc.*, 2009 WL 2956926 at *3 (N.D. Ill. Sept. 14, 2009).

The ABP defendants admit to operating and using wireless networks in connection with their business.  While a majority of the infringing networks do not use any SonicWALL products, there are some that allegedly use a SonicWALL access point.  Even in these networks, though, the SonicWALL product is only one component of the overall wireless network. Moreover, as previously noted, it is the customers, not the manufacturers, who have derived significant financial benefit by infringing Innovatio's patents.  Thus, to be fully compensated for the infringement, Innovatio will likely have to proceed against the customers.

Because Innovatio has a substantial interest in proceeding against the Illinois defendants, the customer suit exception does not apply for this reason alone.

### 2.    This case will not resolve all of the issues in the Illinois action

In addition, courts do not apply the customer suit exception where the manufacturer suit will not resolve all, or substantially all, of the issues raised in the underlying customer suit.  As the Federal Circuit noted in rejecting one of Motorola's prior attempts to stay a customer suit in light of the customer suit exception:

> [I]n those cases in which a customer suit exception has been held to favor the forum of the second-filed action, **the second action would resolve all charges against the customers in the stayed suit, including liability for damages**. Such undertaking is absent in the case at bar. Were Kahn to prevail against Motorola on the issues raised in Illinois, he would still have to relitigate the question of infringement against General Motors, and perhaps also of validity.

*Kahn*, 889 F.2d 1078, 1081-82 (Fed. Cir. 1989) (emphasis added).  Other courts, including this Court, have reached similar conclusions.  *See Teleconference Sys.,* 676 F. Supp.2d 321 (D. Del. 2009) (denying Cisco's motion to stay Delaware customer suit where Cisco's suit would not substantially streamline issues); *see also Cherdak v. The Stride Rite Corp.*, 396 F. Supp.2d 602, 605 (D. Md. 2005) (refusing to apply doctrine unless "second action would resolve *all* charges against the customers in the stayed suit") (citations omitted; emphasis in original).

As noted above, it is unlikely that this action will completely resolve **any** issues before the ABP court, let alone all of them.  Only one of the six ABP defendants uses any SonicWALL equipment, and even that defendant uses a significant number of access points from manufacturers other than SonicWALL.  Nor will this case resolve any issue regarding infringement of the hundreds of terminal and combination claims currently asserted.  This Court's determination as to the infringement of SonicWALL products will have little or no impact on products made by other manufacturers, particularly as to non-mandatory claims.  Even if this Court can resolve liability as to certain SonicWALL products, it will not be able to award damages adequate to compensate Innovatio based on the customer's infringement.  Thus, the customer suit exception does not apply for these reasons alone.

In addition, in determining whether a manufacturer suit will resolve substantially all of the issues in the underlying customer suit, courts also consider whether the customers agree to be bound by the decision in the manufacturer's suit.  This factor ensures that application of the doctrine does not result in duplicative litigation  *See IP Innovation L.L.C. v. Dell Computer Corp.*, 2004 U.S. Dist. LEXIS 6129 (N.D. Ill. Apr. 8, 2004) (noting exception should not apply where parties do not agree to be bound by decision); *accord Teleconference Sys.*, 676 F.Supp.2d at 321 ("[T]he Cisco defendants do not agree to be bound by a decision in plaintiff's favor in California. Therefore, Cisco's California declaratory judgment action will not be outcome determinative of plaintiff's Delaware action.").  This factor is less significant in the present scenario because, as noted above, this action will resolve only a fraction of the issues before this Court.  Thus, barring the highly unlikely event that the Delaware court invalidates all seventeen asserted patents, Innovatio will still have to proceed against the ABP defendants regardless of the outcome in Delaware (and regardless of whether defendants agree to be bound by the Delaware

decision).  Nevertheless, this is a moot point, as the ABP defendants, including Caribou Coffee, have not agreed to be fully bound by this Court's decision.

## IV.    THIS COURT SHOULD ALSO EXERCISE ITS DISCRETION TO DISMISS SONICWALL'S COMPLAINT

The Supreme Court has noted that "[t]he Declaratory Judgment Act provides that a court '*may* declare the rights and other legal relations of any interested party,' not that it *must* do so." *Medimmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136 (2007) (emphasis in original; internal citations omitted).   Based on this permissive language, the Supreme Court has "repeatedly characterized the Declaratory Judgment Act as 'an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant.'"  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995) (citations omitted).   As such, courts should not waste judicial resources resolving declaratory judgments that serve no useful purpose.  *Id.* at 288 ("If a district court, in the sound exercise of its judgment, determines after a complaint is filed that a declaratory judgment will serve no useful purpose, it cannot be incumbent upon that court to proceed to the merits before staying or dismissing the action.").

In determining whether to exercise its jurisdiction, courts should consider, among other things: 1) whether declaratory relief would clarify the issues; 2) the convenience of the parties; 3) the availability and convenience of other remedies; and 4) whether the declaratory judgment act is being used for "forum shopping," or as a means to provide another forum in a "race" for *res judicata*.  *Terra Nova Ins. Co. v. 900 Bar, Inc.*, 887 F.2d 1213, 1224 (3d Cir. 1989).  These factors weigh in favor of dismissing the current action.

First, allowing this case to proceed will not clarify any issues between the parties or before the Illinois court.  As noted above, the current suit will likely not resolve **any** of the disputes currently pending before the Illinois court.  In addition, the ABP litigation is well ahead

of the current litigation, which is still in its infancy.   Thus, this factor weighs in favor of dismissal.  *See, e.g., International Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 1218 (7th Cir. 1980) (dismissing declaratory judgment suit where issues could be better resolved in parallel action); *People with AIDS Health Group v. Burroughs Wellcome Co.*, 1992 U.S. Dist. LEXIS 578 at *5-7 (D.D.C. Jan. 17, 1992) (citations omitted); *American Ntl. Can Corp. v. Ball Corp.*, 21 U.S.P.Q.2d 1719 (N.D. Ill. 1991).

In addition, Illinois is the most convenient forum for resolution of the current dispute.  As noted above, the key information (*e.g.*, the architecture of the defendants' infringing networks and the benefits obtained therefrom), and the key witnesses are likely in Illinois, but not in Delaware.  Moreover, dismissing SonicWALL's complaint would not deprive them of a venue to be heard, as it can seek to become involved in the Illinois action.

Finally, SonicWALL's decision to file in Delaware can be viewed as "forum shopping" or a "race" for *res judicata*.  Rather than seeking to intervene in the Illinois action – which would have made the most sense given the progress of the Illinois action – SonicWALL filed this action in Delaware.  SonicWALL, along with the other manufacturers, likely chose this forum in an attempt to handcuff Innovatio and prevent it from obtaining full compensation for the ABP defendants' infringement.  If this case proceeds, Innovatio must defend an action that will resolve few, if any, issues and may be obliged to join customers in order to obtain full compensation in a single suit.  Otherwise, Innovatio may face the (albeit incorrect) argument that Innovatio is barred by *res judicata* from later suits against the customers.  Thus, for each of these reasons, the Court should, in its discretion, decline to exercise jurisdiction over this dispute.

## V.    CONCLUSION

For the foregoing reasons, this Court should grant Innovatio's motion to dismiss or, in the alternative, to transfer this case to Illinois.

Respectfully submitted,

Dated: December 5, 2011

*/s/ Kenneth L. Dorsney*

Kenneth L. Dorsney
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE  19801
Telephone:  (302) 888-6800
kdorsney@morrisjames.com

OF COUNSEL:
Matthew G. McAndrews
Raymond P. Niro, Jr.
Brian E. Haan
Gabriel I. Opatken
NIRO, HALLER & NIRO
181 West Madison St., Suite 4600
Chicago, Illinois 60602
Telephone: (312) 236-0733

*Attorneys for Plaintiff,*
**INNOVATIO IP VENTURES, LLC**